Good morning and thank you for accommodating us during these very strange times. In this case, Northern Oil and Gas and EOG Resources are both oil and gas lessees. They hold competing oil and gas leases. EOG seeks to hold Northern to prior litigation that happened in state court among the oil and gas lessors. Northern was not made a party to that case, neither was EOG, and Northern was not given any notice of that case until approximately or nearly three years after it concluded. Neither actual nor constructive notice. There was no list pendants filed and EOG came back in 2015, I'm sorry, it was about two years after the prior litigation and informed Northern of the outcome and told Northern that it would be reversing out revenues previously paid to Northern under its oil and gas lease. The dispositive issue on appeal is whether Northern Oil and Gas can be bound to this prior litigation among the lessors, who are the mineral owners, when Northern acquired its interest years prior to the commencement of the original case but was given no notice. When I say three years, it was three years prior to the commencement of the original action that Northern held its interest in the oil and gas lease, but neither lessees were joined. Northern's basic position in this appeal is essentially the position of the North Dakota Supreme Court. The North Dakota Supreme Court has said repeatedly that the Privity Doctrine will not apply for res judicata purposes as a matter of law when the person who is to be estopped acquired its interest prior to the commencement of the previous litigation. Conversely, that person will be estopped when they acquired their interest subsequent to the prior litigation. It's a bright line rule. It was originally adopted in the Hull case. It was confirmed, I think that was a 1950, I want to say four case. It was confirmed in a Hirsch case in 1965. Those were the primary cases that we were arguing before the district court when it was originally brought to, when EOG raised its motion to dismiss. While the case was pending, EOG disclosed a case called Garrity Bakken. Subsequent to that, again in 2019, the rule was confirmed in Great Plains Royalty. That also, I don't have the citation in front of me, that is also in the brief. To be clear, our position is not that privity can never exist between a lessor and a lessee for purposes of preclusion. The distinguishing feature is whether or not the lessor or lessee acquired its leasehold interest prior to the commencement of the litigation, the previous litigation, or after. That's the distinguishing feature under North Dakota law. Like I said, Northern's interest was acquired and up-recorded nearly three years prior to the mineral owner slash lessor litigation. Was this case, the Garrity Bakken case, brought to the attention of the district court? It was, in fact, and I was going to mention that. It was pending while we were litigating the matter. EOG's counsel, and I commend him for this, but it's directly contrary to EOG's position in this case. EOG's counsel disclosed the case and we entered into supplemental briefing about the effect of Garrity Bakken. The district court, nonetheless, dismissed the case based on privity and res judicata. Like I was saying, Hersch and Hull, we thought, was very clear on the matter, given the breadth of the language used in those cases. Garrity Bakken did put to rest any ambiguity or dispute about the matter. The Garrity Court stated very clearly, quote, Certain parties prevailed. The plaintiffs, I believe, prevailed in that case. I might have been the defendants, I apologize, but certain mineral owners prevailed. Garrity Bakken and other lessees were not parties to that litigation, were not satisfied with the results. They brought a subsequent action in front of a different judge, raising the exact same parties. That judge disagreed with the first judge. The second action then was taken up to the North Dakota Supreme Court. The North Dakota Supreme Court disagreed with the first judge and agreed with the second judge. The effect of the action, the second action, was that the second judge effectively overruled the first judge. Can I ask a practical question, Mr. Shortenshubert? Sure. You have a case where the lessor's litigated title went all the way to the North Dakota Supreme Court and decided who owned the title. Now you're in federal court and you're asking the federal judge, as I understand it, to say that the North Dakota Supreme Court was wrong on an issue of North Dakota title law. Is that where we're basically... Is that the posture of the case? No. Did I understand that correctly? I'm sorry. No, it's not. We actually... This has always been a Duhigg deed, and the Duhigg rule certainly has its critics. I'm one of them. With that said, this has always been a Duhigg deed, and certainly the North Dakota Supreme Court adjudicated that. That's stare decisis. The North Dakota Supreme Court also adjudicated the fact that the Gilbertson exception to the Duhigg rule does not apply in this case. What didn't happen is that the trial judge in the state court did address the issue of reformation, because a Duhigg deed can be reformed if there is clear and convincing evidence. Ms. Finkel did attempt to reform the deed on at least some of the evidence that we would be relying upon for purposes of reformation. The state district court ruled against Ms. Finkel on that issue. For reasons that are unbeknownst to us, Ms. Finkel did not appeal that ruling. Now, what we would be doing would be utilizing other procedures and evidence, an expert witness, to explain some of the documents, the instruments that are of record, that show unequivocally, without a doubt in our expert's mind at least, that the Duhigg rule was not intended. There's certain mathematical computations under a delayed rental stipulation, under the certain oil and gas leases when you tie out the lease bonuses that were paid on a per acreage basis. There's absolutely no doubt that the Duhigg rule was not intended. That's really what went wrong. This would be no different than what the outcome in the Garrity Bakken case, is that a federal judge could effectively overrule or disagree with a state trial judge. That in and of itself, we don't think would necessarily have the same result in Garrity Bakken. In Garrity Bakken, that had the effect of unwinding completely the first judgment of the district court. Here, under the Statoil case, we believe, and this is where we talk about the pie analogy. There is a pie analogy with respect to indispensable parties and quiet title actions. There would be the ability to honor both the prior state court judgment with respect to the lessors, and also honor an adverse or a different judgment in federal court. That's because Northern holds what we call an 83% net revenue interest, whereas the lessors in the state court litigation who prevailed own a one-sixth royalty interest, which is 16.67%. That tallied up 99.67% or whatever it is. That's enough pie. Both judgments could be honored, and we don't think that the effect would be the same as in Garrity Bakken. If it is, that's the mineral owners who took that risk. By not joining the parties, the Garrity Bakken court was very clear that they rendered their quiet title judgment frail, and subject potentially to being upended by subsequent proceedings. That was a decision they made, and they should bear the risk of that. Counsel, let me ask you this question. Wouldn't it behoove then an attorney that's going to bring an action affecting real property to search the title records to find out what entities were out there that had some kind of claim of record so that they could be joined in the action? Isn't that the way this would normally work? Correct. I think that if you look at the North Dakota quiet title statutes, joiner of all parties is permissive if you read the statute. That's acknowledged in Garrity Bakken. The plaintiff in a quiet title action and the defendants, because they can also join parties under Rule 19, have the ability to obviously go and do whatever title examination that they think is necessary to bring in all the parties who may be affected by the judgment. If they do that and don't join certain parties, or if they neglect to do that and fail to join certain parties, if those interests were acquired prior to the commencement of the litigation, those interests are just simply not part of the litigation, and that renders the quiet title judgment frail in the words of the North Dakota Supreme Court. Now, there was a case that came out after Garrity Bakken called Great Plains Royalty v. Schwartz. I think that was after Bakken, right? Correct, 2019. What effect, if any, does that have on this analysis? That case is factually not... Garrity Bakken is factually identical to this case in terms of the Privity and the Writs Judicata question. That case is factually similar, but it didn't involve an oil and gas leasehold interest, I don't believe. But one of the parties there, I believe it was ESCO or something like that,  and therefore were not bound by the prior litigation. They just simply affirmed the rules stated in Hull, Hirsch, and Garrity Bakken. But you don't think it in any way undermined your Garrity Bakken argument? I don't think so. I think it affirmed, in my view, it affirmed Garrity Bakken and Hirsch and Hull, which I believe all say the same thing. I don't think the real property interests in question matters. I think it's more of a matter of was the interest acquired, the rights and property, to use the term of the North Dakota Supreme Court, were those rights acquired prior to the commencement of the first litigation? Counsel, you're within your rebuttal time. You can continue if you like, or you can reserve the remainder. Thank you. I think I will say one more thing, and that is that there's a lot of briefing about the applicability, about federal law, federal preclusion law, and as Judge Hovland noted in his order on motions to dismiss, states are able to provide more protective preclusion principles, and while we think certainly that the federal law does not support EOG state law here, this is a diversity case. State law supplies the rule of decision, and state preclusion law governs here, and we believe that it's a bright line rule, consistent with Justice Ginsburg's statement in Taylor, which says that crisp rules with sharp corners are preferable to roundabout doctrines with opaque standards. And with that, I'll leave the remainder for rebuttal. Thank you. Thank you, Mr. Schwartzenberger. Mr. Bershe, that's your honors. My name is Larry Bershe, and I represent EOG resources in this matter. In this matter, Northern Oil and Gas seeks in federal court to essentially reverse a ruling of the North Dakota Supreme Court. That ruling favors EOG's mineral lusters, the Johnsons, to the detriment of Northern's mineral lusters, the Finkels. If Northern were to prevail in this matter, inconsistent judgments between the two court systems would resolve, and these inconsistent judgments would create title uncertainty and spur potentially additional litigation. Northern overlooks that the obligations to leasehold owners are based upon calculations of percentages dependent upon mineral ownership. If Northern were successful, Northern would have a leasehold interest that would be recognized, even though it would be based on a lease from Natsi Finkel, who under the state court judgment owns no minerals. EOG's leases would become worthless to it, even though EOG's lusters, the Johnsons, have a state court judgment stating they own the minerals and are entitled to royalties. This mineral dispute question actually presents questions of federalism. While the appeal itself involves questions of title, the practical effect is that a federal court will sit in judgment of the North Dakota state court system. There's a doctrine called the Worker-Felon Doctrine. It doesn't apply in this case because it applies only to the parties that are involved, but it's the same principle that federal courts are not to sit in judgment of state courts or other district courts. Mr. Boesche, if I'm understanding how you're beginning, what you're talking about, we're a step removed from that challenge, aren't we? Are we, on this appeal, dealing with the question of whether or not there's privity between these entities such that they can be precluded from making the claim that you're discussing? That's true, Your Honor. There are multiple theories of privity. Judge Hovland, in his decision, noted that he's not convinced that there is only one theory of privity for property rights. There are two theories of privity that apply in this case. One is this derivative and subordinate interest privity, sometimes called the legal relationship category, as it was described in the Taylor v. Virgil U.S. Supreme Court case, which cataloged various doctrines of privity. And another one that applies is the one that Judge Hovland applied, the adequately represented theory. Well, I guess to get right to it, with our limited time, why doesn't the rule in Geraghty-Bachan apply here to enable this claim to proceed? In Geraghty-Bachan, no argument was made that either of those theories apply. A case of stare decisis only on issues that were brought before the attention of the courts, that the court recognized and decided upon. In either of the Geraghty-Bachan or the Great Plains cases, according to the opinions looking at them, neither privity doctrine was considered by the court and applied. So it's still an open case whether these two theories, this subordinate derivative theory or the adequately represented theory, apply in North Dakota. Privity in a diversity case before the Eighth Circuit or the federal courts is a matter of state law. And when state law is not fully decided on an issue or decided at all, the federal court can look at various other cases from other jurisdictions, treatises, etc. Both these theories are well-recognized theories of privity. The derivative or subordinate test traces back to an 1848 United States Supreme Court decision, the Stacey decision, where it was recognized in the case. It may have been recognized before that, but that's an old case, 1848. The restatement second of judgments recognizes it and they state that privity may arise from having a legal relationship that is derivative from one who was a party. Can I ask you a question, Mr. Bachan? You said privity was not raised at Geraghty-Bachan. And I'm looking at the opinion, and it says right here, however, the privity doctrine cannot be applied if the rights to property were acquired by the person sought to be found before adjudication. It seems to me that they recognized privity as an issue in the case and rejected it. Your Honor, I overstate it. Privity was recognized, but the theories that I'm speaking of right now, the substantive derivative, subordinate derivative test, or the adequately represented test were not addressed in those cases. Privity, of course, was an issue. But if they say privity doesn't apply, aren't we bound by that? Maybe what you're really saying is somebody should have made a better argument, but they made the argument and they lost. I don't know how we get around that statement. The argument is that whether it was raised or not, it was never actually considered by the North Dakota Supreme Court and rejected. How do we know that? Because all it says, the opinion says privity doesn't apply. How do we know which theories of privity they were determining in this case?  By reading the text of the case and recognizing that there's no discussion of it, that the court never addressed the issue head-on to create what was a very decisive effect to preclude those two theories. There must be some indication. There is a Minnesota case with some colorful language about stare decisis is never properly invoked unless the judicial mind has been applied to and passed upon the precise question. The derivative and subordinate theory is widely recognized. This court recognized it in the Mid-Continent case cited in the briefs, a case arising out of South Dakota. And it has been applied in particular in an oil and gas case in Louisiana called the Sherlock case, which is directly applicable to the situation at hand here, that a judgment that binds the mineral owners also binds the lessors because it's the same quality, the same legal right that is involved. The adequately represented theory applies, and this is the one that Judge Humland in his decision relied upon, when one, the interests of the non-party and her representative must be aligned. We have that here because it's an argument in both cases involving the same minerals. And either the parties to the first litigation took care to protect the interests of the absent parties, or the parties to the first litigation understood their suit to be on behalf of the absent parties. This theory is also recognized in the Taylor versus Virgil case, which I recommended, which for federal purposes, catalogs a number of theories of prudity. I want to ask you kind of a variation on the question, the practical question I ask your colleague. Wouldn't all this be avoided? And isn't it routinely avoided by parties conducting a somewhat routine title search when litigation is contemplated that affects title to real property, including title to minerals, a search to determine what entities are out there that may be claiming some record interest so that they can be joined to the litigation? Wouldn't that avoid all of this? Doesn't that fit in with the argument about privity that your adversary here is asserting? Isn't that something that title lawyers, whether it's North Dakota or Arkansas or Texas, in the mineral field, don't they do that every day as they're bringing actions that affect title to minerals? That would certainly be the prudent thing to do, would be to do a title search and determine who all would need to be included as a party. Certainly the prudent approach, whether that was done in this case or not, I have no idea, but it would be prudent, but not necessary to bind the interests of other parties whose interests arise from or are subordinate to, or who would be adequately represented by the parties already to the opinion. The way things are right now with the fractionalization of mineral interests, it becomes quite a challenge to identify all the parties who would be potential joining parties in the case. I have no idea what was done outside the record in the underlying State Court case to do those things, but there is issues with the fractionalization of the minerals. The Supreme Court in the Taylor v. Sturgill case recognized that this theory for the subordinate derivative theory was a matter of privity, but it actually was a matter of property law as well. I believe the reference is that so that if you miss the party in searching for the potential parties for the lawsuit, that that party would also be bound if its interests were adequately represented or were subordinate to or derivative of the other lawsuit. The people on the other side of this case, the Northern and Finkel Group, available to the Northern is Rule 60B and its various subdivisions that allows the party who discovers a decision later, after it's already been decided and judgment has been entered, to take action to try to overturn that judgment and get a chance to put their arguments in. There's no indication on the record that Northern did that. That was available to them and there's nothing in the record that would show that. That would eliminate the questions that we're deciding here today. It would eliminate the federal court reviewing the action of the North Dakota Supreme Court and the state court. If they had done that first, perhaps they may not have prevailed, but it's an avenue that was available to them that they did not exercise. Judge Hovland, he addressed the issue twice in the first instance and then he ruled that it was a matter, we argued that it was claim preclusion. He reached the same result that we were asking for, said it was a matter of issue preclusion. And then when the Jerry case came down, we asked again for clarity, does this affect your decision and Judge Hovland said it did not. There are multiple avenues in essence he was arguing or stating that there were other privity theories besides the theory of being bound only if the party against whom an argument of privity is made acquired his property interest after, but that there were others. And he in fact applied the adequately represented theory. And the case that has come down since Gary, the Great Plains case adds nothing to the same position that there is no indication that the North Dakota Supreme Court has ever considered expressly and rejected the subordinate or deliberative theory. The adequately represented theory, I believe that the court, North Dakota Supreme Court has applied that doctrine in the Stetson case, although they were not very old in going out and holding that it was the adequately represented theory. But if you study the case, it looks like that was a theory that was being applied. Would that be a factual dispute then? What do you have to show that there is adequate representation? We have adequate representation in that the non-party and the representative must be aligned in their interests. That's satisfied in that it's the same minerals being involved. And either the parties to the first litigation took care to protect the interests of absent parties or the parties to the first litigation understood their suit to be on behalf of absent parties. The judgment in the case says it binds all parties that hold their interests by, through, or under the parties in the litigation. And we also have a motion to take judicial notice of an affidavit from the state court case that shows that the Finkels were aware that there were subsequent transfers and that there was a lease involved. They do not have any rights unless mineral owners have rights. So as a factual circumstance, it also showed that they knew that they were representing other interests. I see my time has concluded. I want to thank you for your time and attention. I think that the court should rule and affirm the district court judge, Judge Hovland. Thank you. Thank you, Mr. Beauchene. Mr. Schwartzendruber, your rebuttal. Thank you. Yes, just a few comments here. The issue of plain preclusion and issue preclusion was raised by Garrity Bakken in the Garrity Bakken case. I believe it was the Ashtool defendants. I might not be pronouncing that correctly. They did assert that Garrity Bakken should be precluded as an assignee of the lessee of the mineral owner, just like Northern. The court there said that would have been dispositive. The court could have disposed of the entire case there and not even gotten to the merits of the title issue. The court didn't do that. The court dispensed of that argument and addressed the issue and agreed with the second court there. Mr. Beauchene's argument that Ms. Finkel didn't own anything, Northern didn't own anything. That's exactly the essence. That would eviscerate the rule in this case. If I owned 100% of the minerals in a certain tract of land and I conveyed 99.99% out to 25 different people, Mr. Beauchene was talking about the fractionalization of mineral interests. If I conveyed substantially all of my interest out and then was sued and I lost in quiet title, but none of those people were named, Mr. Beauchene's position is that all of those people, as my transferees, would be precluded, even where they acquired their interests of record prior to the litigation and had no notice of it. That's exactly what the North Dakota Supreme Court is preventing here. Each party, if they acquired their interest before the litigation, gets their day in court. It's a bright line rule. In situations where that occurs, the transferor, who no longer owns the interest, is not adequately representing the interests of the transferee. There are distinct rights. Here, Ms. Finkel transferred out a leasehold estate to Northern. She doesn't own a leasehold estate. Actually, she transferred it to Montana Oil Properties, who in turn transferred it to Northern. She doesn't represent the same legal right. It's a stick that's been carved out of the bundle of sticks to go back to the old property law class. It's not subject to the litigation if it's been carved out and transferred prior to the litigation. Just one comment on Rule 60. If the judgment is void or not binding against Northern, we don't have to go under Rule 60. We weren't a party to those proceedings. I see my time is up. If I may have permission to finish the thought. Finish the thought. If we were not bound to those proceedings as a party, then we can do exactly what we just did and file a separate suit in federal court against the competing interest owner. Thank you. Thank you, Mr. Schwarzenegger. You also, Mr. Boshi, we appreciate counsel appearing before us today. We have studied the briefing and will continue to do so and take the case under advisement and render decision in due course. Thank you very much. Thank you very much.